## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| DONALD J. TOMPKINS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-4004 |
| CENTRAL LABORERS' PENSION FUND, | ) |
| Defendant. | ) |

## <u>O R D E R  &  O P I N I O N</u>

On August 3, 2011 the Court entered an Order and Opinion denying Plaintiff's Motion for Summary Judgment, and granting in part and deferring in part Defendant's Motion for Summary Judgment. (Doc. 49). The Court deferred ruling upon Count III of Plaintiff's Amended Complaint, which it set for oral argument on August 22, 2011. (Doc. 49). Prior to the hearing, on August 19, 2011, Defendant filed a Supplemental Affidavit of Sharon E. West in support of its Motion for Summary Judgment as to Count III (Doc. 51),[1] and Plaintiff filed a Response thereto (Doc. 52). On August 22, 2011, the parties appeared for oral argument, and the Court is now ready to rule upon Defendant's Motion for Summary Judgment as to Count III of Plaintiff's Amended Complaint. For the following reasons, Defendant's Motion is GRANTED.

---

[1] The Supplemental Affidavit was actually filed as an exhibit to a Motion for Leave to File, placed before the Court on August 16, 2011 (Doc. 50). The Court granted Defendant leave to do so on August 18. (Text Order of 8/18/2011).

## DISCUSSION

In Count III of his Amended Complaint, Plaintiff seeks a declaratory judgment that certain provisions of Defendant's Plan violate the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*. (Doc. 19 at 24). Specifically, he alleges that § 7.1 and §3.3(d) of the Plan work a forfeiture in violation of § 1053(a), and that § 3.3(b), §3.7, and §4.3(b) of the Plan violate the anti-cutback rule of §1054(g) and work a forfeiture in violation of § 1053(a). (Doc. 19 at 24). However, Plaintiff does not make any allegations to the effect that the provisions have, in practice, worked as a forfeiture or a cutback to his own benefits, nor those of any other participant. Nor does Plaintiff assert that Defendant has violated any fiduciary duty. Instead, he merely asserts that the language of the Plan is at odds with the requirements of ERISA. Accordingly, Plaintiff seeks to have this Court engage in a facial analysis of the Plan and to enjoin Defendant from applying these provisions in the future. (Doc. 19 at 24).

**I.    Standing[2]**

Count III of Plaintiff's Amended Complaint is distinct from his previously disposed of claims, insofar as Plaintiff does not allege that any of the plan

---

[2] Defendants did not raise the issue of standing in their Motion for Summary Judgment, or Supplemental Affidavit in support of Summary Judgment, however at oral argument, after the issue was raised by the Court *sua sponte*, Defense counsel stated that he did not wish to waive it. Regardless, Plaintiff must establish standing for each claim he seeks to press, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and a determination of whether Plaintiff has standing "is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Therefore, the Court has an obligation examine the issue of standing to ensure that it has jurisdiction over Count III of Plaintiff's Amended Complaint.

provisions at issue in Count III have caused a harm directly to him.³ Rather, Plaintiff maintains that he brings Count III pursuant to § 1132(a)(3), which empowers a "participant, beneficiary, or fiduciary" to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." (Doc. 19 ¶ 48). According to Plaintiff, § 1132(a)(3) does not require relief to be directly personal to the "participant." (Doc. 19 ¶ 49).

It appears that Plaintiff does have statutory standing to bring Count III pursuant to §1132(a)(3) as he is a participant in Defendant Fund and is seeking to enjoin Defendant from applying allegedly violative Plan provisions. However, in addition to satisfying statutory standing, Plaintiff must also have constitutional standing to bring his cause of action.⁴ *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *Kendall v. Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009) ("A plan participant suing under ERISA must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty."). In evaluating Plaintiff's

---

³ For a full background and disposition of Counts I and II of Plaintiff's Amended Complaint, see this Court's Order and Opinion of August 3, 2011. (Doc. 49). In his Motion for Summary Judgment, Plaintiff did not move for judgment as to Count III, and noted that Count III sought injunctive relief as to specific Plan provisions unrelated to his other claims for relief. (Doc. 41 at 2). As Plaintiff's attorney admitted at oral argument, Count III presents purely legal questions, which Plaintiff's attorney represented could be determined based upon the allegations in his Complaint and the legal arguments made in his Response to West's Supplemental Affidavit. (Tr. at 14). Accordingly, the Court questions whether and in what manner Plaintiff intended to bring Count III to resolution, as the deadline for filing dispositive motions had passed, and the matter is not one fit for a trial.

⁴ At oral argument, Plaintiff conceded that he had relied exclusively upon the terms of the statute to confer standing upon his third cause of action. (Tr. at 4-10).

3

standing, the Court must determine whether Plaintiff has alleged "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on *his* behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). That is, the Court must determine "whether the plaintiff is the proper party to bring th[e] suit." *Raines*, 521 U.S. at 818. It is the "burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is the proper party to invoke judicial resolution of the dispute." *Spencer v. Kemna*, 523 U.S. 1, 11 (1998).

In order to satisfy constitutional standing requirements, Plaintiff must show: 1) that he has suffered an injury in fact; 2) that the injury is fairly traceable to Defendant's actions; and 3) that it is likely that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Environmental Svcs.* 528 U.S. 167, 180-81 (2000). Generally, to show that he has suffered an injury in fact, a Plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "primary inquiry here is whether [Plaintiff] has pled a violation of his ERISA-created rights sufficient to satisfy Article III's injury requirement." *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 455 (3rd Cir. 2003).

While the Court has been unable to find any Seventh Circuit opinion which addresses the issue, several other circuit courts have discussed the manner in which a plaintiff may establish an injury for the purpose of seeking injunctive relief under

4

ERISA. In *Horvath*, the Third Circuit held that in order to assert such an injury, a plaintiff need only allege that his statutory ERISA rights have been violated. 333 F.3d at 456 (plaintiff "need not demonstrate actual harm in order to have standing to seek injunctive relief requiring [the defendant plan] to satisfy its statutorily-created disclosure or fiduciary responsibilities"). The Third Circuit reasoned that ERISA created certain rights in the plaintiff, including the right to have the defendant fund act in accordance with its fiduciary duty and make required disclosures to plan participants. *Id.* Accordingly, the plaintiff had the right to seek injunctive relief forcing the defendant to fulfill its obligation. *Id.*

Two years after the Third Circuit decided *Horvath*, the Second Circuit recognized its holding that injunctive relief may be sought under § 1132(a)(3) without a showing of actual harm. *See Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005). In *Kendall v. Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 119-121 (2d Cir. 2009), the Second Circuit clarified that a plaintiff seeking injunctive relief must still allege some injury or deprivation of a specific right arising from an alleged violation of fiduciary duty, rather than simply asserting a blanket claim for breach of fiduciary duty.

The Sixth Circuit has also recognized the Third Circuit's analysis in *Horvath* and held that "Plaintiffs need not demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3); they may allege only a violation of the fiduciary duty owed to them as a participant in and beneficiary of their

respective ERISA plans." *Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598, 610 (6th Cir. 2007) (finding that plaintiffs' claim that their plan breached a fiduciary duty with respect to the plans to which they belonged was sufficient to establish injury-in-fact for purposes of constitutional standing).

Here, Plaintiff's claim is that Defendant's Plan is in violation of various ERISA provisions, specifically the anti-cutback and anti-forfeiture provisions found in § 1054(g) and § 1053(a). Plaintiff, however, does not allege the violation of any fiduciary duty owed to him, any harm which he has suffered, or even any benefit which would be bestowed upon him should the Court find that the provisions are facially at odds with ERISA. "Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) if the plaintiff wins." *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007). Should Plaintiff prevail on Count III, he would receive no benefit whatsoever. At oral argument, Plaintiff's attorney characterized his motivation to bring Count III as follows: "[Q]uite frankly, it was, okay, there are some other things bothering me in the plan, I will add them to Count III as long as I have got to do an amended complaint anyways or if I choose to do an amended complaint let's add those issues too because some of these issues were motivated, not that these issues don't exist in this case, they exist elsewhere in the fund, matters not in litigation." (Tr. at 5). Although standing requirements are relaxed when a Plaintiff seeks injunctive relief pursuant to § 1132(a)(3), there still must be *some* semblance of an actual case or controversy between the parties. However, Plaintiff alleges absolutely no injury, nor any deprivation of his statutory

6

rights.  Plaintiff is simply stating that there "are provisions here that violate . . . ERISA and I would like a declaratory resolution of that matter. . . . It seems to make perfect sense if we are into this plan, let's deal with a couple other provisions in the plan and have a declaratory action."  (Tr. at 7; 9).

As all Plaintiff asks is for a judgment that the Plan as written is facially at odds with ERISA, the Court finds the matter of standing here should be determined in accordance with a case brought as one for declaratory judgment.  "In the context of cases in which, as here, declaratory relief is sought, the traditional test of justiciability has been whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment."  *Vickers v. Henry County Savings & Loan Ass'n,* 827 F.2d 228, 231 (7th Cir. 1987) (internal quotations omitted).  "In order to demonstrate standing for a declaratory judgment, [Plaintiff] must show an actual controversy, that is, that [he] has sustained, or is in immediate danger of sustaining, a direct injury as a result of the [Defendant's]" allegedly illegal plan provision.  *Foster v. Center Township of Laporte County*, 798 F.2d 237, 242 (7th Cir. 1986).  Here, Plaintiff has not shown the risk of any such injury or danger to himself.  (Tr. at 7 "Count III . . . clearly . . . has no direct impact on [Plaintiff] . . . this isn't personal.").  Accordingly, the Court finds that Plaintiff does not have "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on *his* behalf."  *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).

While the Court does not believe Plaintiff has standing to present Count III, out of an abundance of caution, and in recognition of the fact that the Seventh Circuit has not spoken on this issue in this context, it will proceed to analyze the merits of Plaintiff's claims.

## II.    Section 7.1

Plaintiff's first challenge is to Section 7.1 of Defendant's 1999 Restated Plan. Section 7.1 states that: "A pension must be applied for in writing with the Trustees in advance of the date pension payments commence . . . no retroactive payments for months prior to the submission of an application shall be made." (Doc. 19 ¶ 51 (citing §7.1 of the 1999 Restated Plan)). In paragraphs 50 – 53 of his Amended Complaint, Plaintiff alleges that § 7.1 violates ERISA's anti-forfeiture rule, found at 29 U.S.C. § 1053(a). (Doc. 19 ¶¶ 50-53). Section 1053(a) provides that "each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." According to Plaintiff, if payments of a Regular or Service Only Pension do not commence retroactively to the date the payments should have commenced under the Plan, rather than the date of application, the Plan works a forfeiture of pre-application benefits, unless an actuarial adjustment is made for the months that have been lost. (Doc. 19 ¶ 53).

In her Supplemental Affidavit, Sharon E. West, the Department Director of Defendant Fund, states that such an actuarial adjustment is in fact made to account for the date that any pension commences after a participant's normal

retirement date. (Doc. 51 ¶ 11). Ms. West points to § 7.7(c)(4)(i) of the Plan, which provides that "if the Annuity Starting Date is after the Participant's Normal Retirement Age, the monthly benefit will be the Accrued Pension at Normal Retirement Age, actuarially increased for each complete calendar month between Normal Retirement Age and the Annuity Starting Date . . . and then converted as of the Annuity Stating Date to the benefit payment form elected in the pension application." (Doc. 51 ¶ 11). Accordingly, Defendant maintains that § 7.1 works no forfeiture in terms of its Regular Pension.

Plaintiff acknowledges this fact in its Response to Ms. West's Supplemental Affidavit (Doc. 52), however he claims that while there is no forfeiture in terms of the Regular Pension, a forfeiture still occurs under the terms of the Plan when a participant applies for a Service-Only Pension more than one-month after he becomes eligible to do so under the terms of the Plan. (Doc. 52 ¶ 2). However, the Court does not find Plaintiff's argument to be availing. As previously mentioned, the ERISA anti-forfeiture provision, § 1053(a), provides that a pension benefit becomes non-forfeitable upon a participant's attainment of his "normal retirement age." *See Contilli v. Local 705 Int'l Brotherhood of Teamsters Pension Fund*, 559 F.3d 720, 723 (7th Cir. 2009). Accordingly, the anti-forfeiture provision does not apply to pension benefits which begin prior to the normal retirement age, and any such Service-Only Pension benefits are not subject to its terms.[5] Therefore, the Court finds that §7.1 of the 1999 Restated Plan does not violate § 1053(a).

---

[5] The Court notes that this same analysis applies to Plaintiff's challenge of § 3.3(d) of the Plan, which only provides for 36 months worth of retroactive disability

9

### III. Provisions Enacted by Amendment No. 5 to the 1999 Restated Plan

Plaintiff next challenges several Plan provisions which were placed into effect via Amendment No. 5 to the 1999 Restated Plan. (Doc. 19 ¶¶ 54-55). The relevant provisions are incorporated into the 1999 Restated Plan at § 3.3(d), § 1.31(b), § 3.3(b), and § 4.3(b), which deal with the creation and application of a new "Occupational Disability Benefit." Plaintiff contends that these provisions violate both the previously discussed anti-forfeiture provision of § 1053(a), as well as the ERISA anti-cutback provision found in § 1054(g). Section 1054(g) provides that "the accured benefit of a participant under a plan may not be decreased by an amendment of the plan."

However, it is undisputed that both § 1053(a) and § 1054(g) apply only to pension benefits, not to welfare benefits. 29 U.S.C. § 1051(1) (stating that the provisions apply to any employee benefit plan other than, *inter alia*, an employee welfare benefit plan); *Arndt v. Security Bank S.S.B. Employees' Pension Plan*, 182 F.3d 538 (7th Cir. 1999). Accordingly, the parties' arguments center upon whether or not the Plan's Disability Pension and Occupational Disability Benefit are properly characterized as pension or welfare benefits.

Plaintiff argues that both the Disability Pension and the Occupation Disability Benefit are pension benefits, and therefore must comply with the

---

benefits. As will be discussed below, Plaintiff's challenge to § 3.3(d) also fails because disability benefits are not subject to the anti-forfeiture provision found in § 1053(a).

relevant ERISA provisions. (Doc. 52). The Court will look at each separately to determine their proper characterization.

### A. Disability Pension[6]

With respect to the Disability Pension, Plaintiff claims that the fact that 1) its amount is based upon the same earned and accrued Pension Credits as a Regular Pension and 2) it is listed along with other regular pension benefits provided by the Plan, indicate that it is truly a pension benefit. (Doc. 52 ¶¶ 4-5). The Court disagrees. Section 1002 of Title 29 of the United States Code defines a "welfare benefit plan" as any plan, "*to the extent* that such plan . . . was established or is maintained for the purpose of providing for its participants . . . benefits in the event of sickness, accident, *disability*, death or unemployment." (emphases added). Accordingly, any benefits that are triggered by a disability constitute a welfare benefit, even if they are otherwise part of a pension plan. *Anderson v. Suburban Teamsters of Northern Illinois Pension Fund Bd. of Trustees*, 588 F.3d 641, 651 (9th Cir. 2009) ("The 'to the extent' language evidences Congress's intent that the definition encompass *any portion* of a plan in which the employee's disability triggers the right to the benefit."); *Green v. Holland*, 480 F.3d 1216, 1228 (11th Cir. 2007); *Robinson v. Sheet Metal Workers' Nat'l Pension Fund*, 441 F.Supp.2d 405, 417-18 (D.Conn. 2006) *aff'd in part, dismissed in part*, 515 F.3d 93 (2d. Cir. 2008); *Rombach v. Nestle USA, Inc.*, 211 F.3d 190 (2d Cir. 2000); *see also Arndt*, 182 F.3d

---

[6] The characterization of the Disability Pension is relevant to an analysis of whether §3.3(d) violates the anti-forfeiture provision, as well as to whether the creation of the new Occupational Disability Benefit reduced any previous pension benefits.

at 543 ("Viewed from this angle, the benefit is a disability benefit. The disability is the reason for the benefit."). The location of the benefit in a master pension plan is not to the contrary, *Nestle*, 211 F.3d at 194 ("In our view, it does not matter that Nestle called the disability retirement pension portion of its plan a 'pension benefit' and made it part of its master 'pension plan'"), nor is the fact that the amount of the benefit is calculated in the same manner as a regular pension benefit, *see id*. Accordingly, the Disability Pension is properly characterized as a welfare benefit, and the requirements of the anti-forfeiture and anti-cutback rules are inapplicable.

### B. Occupational Disability Benefits

With respect to the Occupational Disability Benefit created by Amendment No. 5 to the 1999 Restated Plan, Plaintiff argues that Defendant's labeling of it as a disability benefit that is not protected by the applicable provisions is not dispositive. (Doc. 52 ¶¶ 8-10). While the Court agrees that the label a party gives a provision is not dispositive as to its proper characterization, it nevertheless finds that the Occupational Disability Benefit is, indeed, a welfare benefit. Like the Disability Pension, the Occupational Disability Benefit is triggered by a disability.[7] Accordingly, this welfare benefit is not subject to either the anti-forfeiture or anti-

---

[7] The Court notes that a participant receiving the Occupational Disability Benefit may instead choose to receive any other type of pension for which he qualifies. *See* § 3.3(e)(2)(A) ("The last payment of an Occupational Disability Benefit shall be made on the earliest of: the first day of the month preceding the Annuity Starting Date of his Regular, Early Retirement, Disability, or Service Pension."). Accordingly, even if the anti-cutback provision applied, the Benefit would likely be found not to cutback any previous benefits because rather than alter the criteria for any previously existing benefit, it has created an entirely new benefit which never before existed: namely, a disability-type benefit for participants who can no longer engage in laborer or other building trades crafts employment due to a disability, but (unlike the Disability Pension) can engage in full-time non-industry employment.

cutback provisions, and Plaintiff's claims as to the invalidity of the provisions enacted by Amendment No. 5 are therefore without merit.

## IV. Section 3.7

Finally, Plaintiff claims that § 3.7 of the 1999 Restated Plan, entitled "Application of Benefit Increases," violates the Treasury Regulation at 26 C.F.R. § 1.411(d)-3, as well as ERISA's anti-cutback and anti-forfeiture provisions. (Doc. 19 ¶ 56). The relevant portion of § 3.7 provides as follows: "The pension amount to which a Participant is entitled shall be determined under the terms of the Plan as in effect at the time the Participant separates from Covered Employment." Plaintiff makes no argument with regard to how §3.7 is defective except to state that he "simply observes an inconsistency between the plan language and the regulation." (Doc. 52 at 7). Presumably, Plaintiff objects to the language because the relevant language in Treasury Regulation 1.411(d)-3 states that the ERISA anti-cutback provision applies to a participant's entire accrued benefit, regardless of whether a portion of it "was the result of an increase . . . pursuant to a plan amendment adopted after the participant's severance from employment." In her Supplemental Affidavit, Ms. West states that Defendant "has never interpreted nor applied the first paragraph of said § 3.7 of the Plan to decrease or cutback any accrued benefit of a participant. That paragraph, which does not address subsequent benefit improvements by Plan amendments, has been consistently interpreted and applied in conjunction with ERISA, including the 'anti-cutback' rule." (Doc. 51 ¶ 8).

Ms. West also points to § 9.1 of the 1999 Restated Plan, which provides that any amendments to the Plan must be in compliance with the requirements of ERISA. (Doc. 51 ¶ 8). Section 9.1 provides that "This Plan may be amended at any time by the Trustees, consistent with the provisions of the Trust Agreement. However, no amendment may decrease the Accrued Pension of any Participant, except: (a) As necessary to establish or maintain the qualification of the Plan or Trust Fund under the Internal Revenue Code and to maintain compliance of the Plan with the requirements of ERISA." Based upon a facial analysis of these three provisions, the Court does not find there to be any conflict between the terms of the Plan and the controlling regulations. Notably, Treasury Regulation 26 C.F.R. § 1.411(d)-3 does not state that a plan *must* increase a participant's accrued benefit based upon a subsequent plan amendment, only that if it does so increase the benefit, it then becomes protected by the anti-cutback rule. Therefore, the Plan is not in violation of the § 1.411(d)-3 simply by choosing not to increase accrued benefits in this manner. Moreover, if the Plan did increase the benefits, § 9.1 indicates that they could not later be reduced by a subsequent amendment, because the Plan must be administered in accordance with the anti-cutback provision. Therefore, there is no conflict, and Plaintiff's final claim is also without merit.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment as to Count III of Plaintiff's Amended Complaint (Doc. 42) is GRANTED. Plaintiff does not have standing to raise the claims alleged in Count III, and, even if he did have

14

such standing, his claims fail as a matter of law. Accordingly, the only matter still pending before the Court in this action is Defendant's Counterclaim against Plaintiff for the tort of fraudulent concealment (Doc. 20). This matter is set for Final Pretrial Conference on Wednesday October 12, 2011 at 1:30 p.m. in Courtroom D of the Peoria Courthouse, and for a Bench Trial on November 7, 2011 at 9:00 a.m. in Rock Island. IT IS SO ORDERED.

Entered this <u>25th</u> day of August, 2011.

                                                               s/ Joe B. McDade
                                                              JOE BILLY McDADE
                                    United States Senior District Judge