UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DONALD J. TOMPKINS,  )  <br> ) <br> Plaintiff-Counterdefendant,  ) <br> ) <br> v.  ) <br> ) <br> CENTRAL LABORERS' PENSION  ) <br> FUND,  ) <br> ) <br> Defendant-Counterclaimant.  ) | Case No. 4:09-cv-4004-SLD-BGC |

<u>ORDER</u>

Presently before the Court is the Defendant-Counterclaimant Central Laborers' Pension Fund's (the "Fund") motion for attorneys' fees and costs. (Fund's Mot. for Attorneys' Fees, ECF No. 54.) For the reasons set forth herein, the Court DENIES the Fund's motion.

I.   BACKGROUND

The material facts of this case have been described in this Court's summary judgment orders (*see generally* Order & Op., ECF Nos. 49; Order and Op., ECF No. 53) and trial order (*see generally* Findings of Fact and Conclusions of Law, ECF No. 73). In brief, the Fund is a not-for-profit, multi-employer fund that falls within the requirements of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* (ERISA). Plaintiff-Counterdefendant Donald J. Tompkins ("Tompkins") became a participant in the Fund in 1978. In 1999, after participating in the Fund for over 20 years, Tompkins applied for and was granted disability benefits by the Fund. Tompkins received these benefits based on a conclusion that he was "totally and permanently disabled," a term defined in the Fund's governing plan (the "Plan"). On June 1, 2007, the Fund terminated Tompkins' disability benefits upon discovering that he

1

was engaged in full-time employment since July 2005. After Tompkins' administrative appeal to the Fund was rejected, he filed the instant suit.

Tompkins' initial Complaint included two counts (*see* Compl., ECF No. 1.) but was later amended to include a third count (*see* Am. Compl., ECF No. 19). Tompkins' counts included assertions that: (1) the Fund's termination of his disability benefits was against the plain meaning of the Plan; (2) the Fund did not properly notify him of the Plan rules governing the termination of his benefits; and (3) the Fund's Plan amendments violated the anti-cutback rule of ERISA. (*See* Order & Op. at 6, ECF No. 49.) The Fund answered these counts and asserted a counterclaim of fraudulent concealment against Tompkins. (*See* Answer to Am. Compl. at 16-19, ECF No. 20.)

The Court granted the Fund's motion for summary judgment on each of Tompkins' three counts. (Order & Op., ECF No. 49; Order & Op., ECF No. 53.) Thereafter, the Court held a bench trial on the Fund's counterclaim of fraudulent concealment. The Court granted judgment in favor of Tompkins and against the Fund on the counterclaim.

The Fund filed its motion for attorneys' fees after the Court's summary judgment orders but before the bench trial on the counterclaim. The Court noted that the motion appeared to be premature and deferred ruling on the motion prior to resolution of the counterclaim to have the benefit of hearing the parties' testimony regarding Tompkins' alleged fraudulent concealment. (*See* Order at 5-6, ECF No. 62.) At the conclusion of the bench trial, the Fund renewed its motion for attorneys' fees. Now that all claims in this matter have been resolved, the Court returns to the Fund's motion for attorneys' fees.

II. LEGAL STANDARD

ERISA has a provision that authorizes an award of "reasonable attorney's fees and costs" "to either party" at the court's "discretion." *See Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct.

2149, 2152 (2010) (citing 29 U.S.C. § 1132(g)(1)).  Under this fee-shifting provision, the Court's discretion is limited to a party that has achieved "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2152 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S. Ct. 3274 (1983)).  However, even though district courts entertain a "modest presumption" in favor of an award, *see Little v. Cox Supermarkets*, 71 F.3d 637, 644 (7th Cir. 1995), mere success does not automatically trigger such an award.  Rather, a fee award is appropriate only if the non-prevailing party's litigation position was not "substantially justified," *i.e.*, that it was taken in bad faith and meant simply as a means of harassing the prevailing party.  *Pakovich v. Verizon Ltd. Plan*, 653 F.3d 488, 494 (7th Cir. 2011); *Little*, 71 F.3d at 644.  Additionally, a Court presented with a request for fees also has the discretion to evaluate whether any "special circumstances" exist that would make an award "unjust."  *Id.*

   III.   DISCUSSION

The Fund seeks an award of attorneys' fees and costs on each of the three counts in Tompkins' amended complaint.  (*See* Mem. of Law in Supp. of Fund's Mot. for Attorneys' Fees and Costs at 1-2, ECF No. 55.)  The Fund contends that the claims were meritless and filed by Tompkins without substantial justification.  (*Id.*)  The Court addresses the Fund's argument for each count separately below.

   A.  Tompkins' Count I

Tompkins' first count alleged that the Fund's rationale for terminating his disability benefits was in violation of the plain meaning of the Plan's relevant terms.  Tompkins' ability to prove this claim was difficult because the Plan explicitly gave the Fund "discretionary authority to determine eligibility benefits or to construe the terms of the Plan."  (*See* Order & Op. at 8, ECF No. 49.)  The discretion afforded by the Plan meant that Tompkins had the burden of proving that the Fund acted in an arbitrary and capricious manner when it terminated his

3

benefits. (*Id.*) That is, Tompkins could only win if the Fund's decision had no rational support in the record, leading to a conclusion that the decision was "downright unreasonable." (*Id.*)

In an attempt to mitigate the stringent arbitrary and capricious standard he was facing, Tompkins argued that the Fund engaged in bad faith and had an inherent conflict of interest. According to Tompkins, the Fund had a motive to interpret the Plan in a way that would allow it to discontinue paying his benefits because the Fund was in financial stress due to poor investment performance. (*Id.* at 11.) In response, the Court did not disregard the arbitrary-and-capricious standard, but agreed that it would keep the existence of a potential conflict in mind when reviewing the Fund's conduct under this standard. (*Id.* at 12.)

The Court then turned to the merits of Tompkins' arguments. While the Court ultimately ruled in favor of the Fund on summary judgment, the Court's decision relied on the deference that the Court was, as a matter of law, required to give the Fund. If not for that deference, the Court noted that it "would be inclined to interpret the provision in the same manner" that Tompkins asserted. (*Id.* at 13.) However, because the language at issue was susceptible to more than one reasonable interpretation and the Fund's interpretation was not unreasonable, the Court could not adopt Tompkins' suggested interpretation.

In light of the Court's discussion on summary judgment, the Court cannot conclude that Tompkins filed Count I without substantial justification. The relevant provision was not unambiguous and Tompkins was within his rights to assert his reasonable interpretation of it and contend that the Fund acted arbitrarily-and-capriciously by departing with his interpretation. The Court also does not believe it would be appropriate to grant an award of fees in an ERISA matter when resolution of an issue hinges, as here, solely on the discretionary interpretation of plan administrators, and the challenging party has reasonably put the proper interpretation of the

4

applicable provision into question. Accordingly, the Court refuses to exercise its discretion to award fees or costs with respect to Tompkins' first count.

### B. Tompkins' Count II

Tompkins' second count implicated an interpretation of the Plan and the Fund's fiduciary obligations. Tompkins alleged that the Fund acted unlawfully by failing to give him accurate notice of the Plan rules governing his ongoing entitlement to benefits. (*See id.* at 15.) Tompkins' arguments relied, in relevant part, on misleading information that he was provided by the Fund. This included statements in Tompkins' application for benefits and the Fund's termination letter that referred to a "suspension" of benefits based on "disqualifying employment" (*see* Fund's Trial Ex. 7; Tompkins' Trial Ex. 7), and references in other documents that Tompkins' benefits constituted a "Disability Pension" (*see* Tompkins' Trial Ex. 7; Fund's Trial Ex. 1 at 21-22). The Fund also informed Tompkins that the overpayment made to him could be recovered using a recapture procedure set forth in the Plan. (Tompkins' Trial Ex. 7.)

In reliance on ERISA's "plan document rule," Tompkins argued that the Fund violated the Plan provision requiring the Fund to provide beneficiaries with notice regarding any "Suspension of Benefits." (*See* Order & Op. at 15.) Yet, despite the information regarding the "suspension" of benefits for "disqualifying employment" included in the documents the Fund provided to Tompkins, the Fund argued that such information had no actual relevance to Tompkins' benefits. (*See id.* at 15-18.) According to the Fund, the Court should ignore statements the Fund made in its own documents to Tompkins in resolving the issue.

The Court's summary judgment decision in favor of the Fund on Tompkins' second count again relied heavily on the deference afforded to the Fund in interpreting the Plan. Regarding Tompkins' notice argument, the Court concluded that the Fund's interpretation that the notice requirement of the Plan did not apply to disability benefits "was not unreasonable."

5

(*Id.* at 18.)   The Court does not believe, however, that such a deferential determination regarding the Fund's interpretation necessarily leads to a conclusion that Tompkins was not substantially justified in challenging the Fund's interpretation of the notice requirements.

In arguing that the Fund breached its fiduciary duty, Tompkins merely took the information he was provided by the Fund at face value, and reasonably asserted statements from that information as proof of the breach.  While those arguments did not prove successful, the Court noted the contradiction in the Fund's documents and its positions in the litigation: "it may not have been wise for [the Fund] to provide [Tompkins] with a 'Retirement Declaration' containing a notice regarding disqualifying employment which, according to [the Fund], was not completely applicable to him."  (*Id.* at 20-21.)  Nor did the Fund provide any information to Tompkins about the Fund's investigation and conclusions regarding Tompkins' employment in 2001 and 2002.  This silence, coupled with the statements in the Plan's own documents, lends further support to the conclusion that Tompkins' second count was substantially justified.

While the Fund's failure to provide Tompkins with notice was not unlawful, the Court believes that the Fund's failure to provide Tompkins with notice of the plan provision it relied on to terminate his benefits is relevant to the assessment of attorneys' fees and costs.  During trial, Tompkins gave credible testimony that he believed he could work and still be entitled to disability benefits.  Tompkins disability prevented him from continuing to work as a laborer in dusty, construction environments, and he believed that his benefits arose because he could no longer continue working in the industry he had been a part of for over two decades. Accordingly, he was under the impression that he could work in non-laborer positions that were not precluded by his disability without losing his benefits from the Fund.  His belief was corroborated by the fact that Tompkins identified his disability as merely an "Occupational

6

Disability" in his application for disability benefits. (Tompkins' Trial Ex. 1 at 3.) Moreover, at the time the Fund terminated Tompkins' benefits, the Plan included a specific "Occupational Disability" benefit program that was consistent with Tompkins' belief that he could work in a non-laborer capacity and not lose his disability benefits. In light of these circumstances, the Court finds that, beyond Tompkins' substantial justification in pursuing Count II, an award of fees and costs would be unjust.

### C.  Tompkins' Count III

Tompkins' third count was disposed of on summary judgment by the Court's *sua sponte* determination that Tompkins lacked standing to challenge provisions of the Plan under ERISA's anti-cutback and anti-forfeiture rules. (*See* Order & Op. at 2, 6, ECF No. 53.) The Court's determination hinged on the fact that Tompkins did not allege that he directly suffered any harm from the provisions. Specifically, the Court noted that he did not allege "the violation of any fiduciary duty owed to him, any harm which he has suffered, or even any benefit which would be bestowed upon him should the Court find that the provisions are facially at odds with ERISA." (*Id.*) In response to questioning from the Court regarding the motive for asserting Count III, Tompkins' attorney stated:

> [Q]uite frankly, it was, okay, there are some other things bothering me in the plan, I will add them to Count III as long as I have got to do an amended complaint anyways or if I choose to do an amended complaint let's add those issues too because some of these issues were motivated, not that these issues don't exist in this case, they exist elsewhere in the fund, matters not in litigation.

(*Id.*)

The Court finds that whether Count III was brought in good faith or meant to harass the Fund is a close question and tips toward harassment in light of Tompkins' attorney's statements during oral argument. Nevertheless, the Court finds the fact that the Court itself raised the question of standing *sua sponte* important. The Fund never questioned Tompkins' standing to

7

assert Count III. This begs the question, if Tompkins so obviously lacked substantial justification in bringing Count III, why did the Fund not move to dismiss it when it was first included in Tompkins' amended complaint? The Fund's failure to mitigate its expenditure of fees and costs by moving to dismiss the claim when it was initially asserted, instead of waiting until summary judgment to substantively address it, undermines the Fund's present assertion that it is entitled to an award for what it now characterizes as "an unjustifiable invocation of standing." (*See* Mem. of Law in Supp. of Fund's Mot. for Attorneys' Fees and Costs at 7, ECF No. 55.) Because the Fund did not challenge Tompkins' standing under Count III, the Court will not exercise its discretion to award the Fund any fees and costs it incurred by substantively responding to it.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant-Counterclaimant Central Laborers' Pension Fund's motion for attorneys' fees and costs.

Entered this 30th day of March, 2012.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE